IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM P. COPE, JR., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 06-0783 (JBS) |
| v. | |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **OPINION** |
| Defendant. | |

APPEARANCES:

Alan H. Polonsky, Esquire
POLONSKY & POLONSKY, Attorneys at Law
512 S. White Horse Pike
Audubon, NJ 08106
     Attorney for Plaintiff

Christopher J. Christie
UNITED STATES ATTORNEY
     By:  Susan Reiss
          Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Suite 3904
New York, NY 10278
     Attorney for Defendant


**SIMANDLE**, District Judge:

     This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g)

(2006), to review the final decision of the Commissioner of the

Social Security Administration denying the application of

Plaintiff William P. Cope, Jr. ("Plaintiff") for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act.  See 42 U.S.C. §§ 401-34 (2006).

At issue in this case is whether the Administrative Law Judge ("ALJ") properly determined that Plaintiff had no disabling impairment or impairments prior to the expiration of his insurance benefits.  On July 18, 2002, Plaintiff voluntarily quit his job due to an alleged disability.  Less than six months later, on December 31, 2002, Plaintiff's disability insurance expired.

For a claimant to receive DIB, a disabling condition must exist prior to the expiration of disability insurance.  20 C.F.R. § 404.320(b)(2) (2006); Kane v. Heckler, 776 F.2d 1130, 1131 n.1 (3d Cir. 1985).  Plaintiff's application for DIB was denied by the Commissioner, and later by the ALJ and the Social Security Administration's Appeals Council, because Plaintiff did not demonstrate he was disabled prior to the insurance expiration date.  (R. at 5-31.)

In his appeal of the ALJ's decision, Plaintiff asks this Court to review the ALJ's determination that he was not disabled prior to December 31, 2002.  This Court must determine: (1) whether the ALJ was required to utilize a medical expert to determine the onset date of Plaintiff's disability, (2) whether the ALJ properly determined Plaintiff had no "severe" impairments, and therefore was not disabled, between July 18 and

December 31, 2002, and (3) whether the ALJ failed to assess the credibility of the Plaintiff's subjective complaints.  For the reasons stated below, this Court will affirm the decision of the Commissioner denying Plaintiff's application for DIB.

I. **STANDARD OF REVIEW**

    A.   **Standard for Judicial Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a claimant's application for Disability Insurance Benefits.  See <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001).  Substantial evidence means more than "a mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  <u>See</u> <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988).  Indeed, the "substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."  <u>Shaudeck</u>

3

v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from [a particular piece of evidence's] weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951))).

The Commissioner "must adequately explain in the record [the] reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held an Administrative Law Judge "must review all pertinent medical evidence and explain [any] conciliations and rejections."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence presented.  See id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)).

The Third Circuit has held access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to

4

scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citing Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).

A district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). However, an ALJ need not explicitly discuss every piece of relevant evidence in his or her decision.  See Fargnoli, 247 F.3d at 42.

Moreover, apart from the substantial evidence inquiry, a reviewing court is required to satisfy itself that the Commissioner arrived at a decision by application of the proper legal standards.  Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983) (stating that courts should examine the legal standard applied by the agency because "the judiciary is the final interpreter of the Social Security Act").

**B.  <u>Standard for Disability Insurance Benefits</u>**

The Social Security Act defines "disability" for purposes of an entitlement to DIB as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

5

for a continuous period of not less than twelve months."  42
U.S.C. § 1382c(a)(3)(A) (2006).  Under this definition, "a
claimant qualifies as disabled only if [that claimant's] physical
or mental impairments are of such severity that [the claimant] is
not only unable to do his [or her] previous work, but cannot,
considering [the claimant's] age, education, and work experience,
engage in any other kind of substantial gainful work which exists
in the national economy. . ."  42 U.S.C. § 1382c(a)(3)(B) (2006).

The Commissioner has promulgated regulations for determining
disability that require application of a five-step sequential
analysis.  20 C.F.R. § 404.1520 (2006).  This five-step process
is summarized as follows:

1.  If currently is engaged in substantial gainful
    employment, the claimant will be found "not disabled."

2.  If not suffering from a "severe impairment," the
    claimant will be found "not disabled."

3.  If the severe impairment meets or equals a listed
    impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1
    and has lasted or is expected to last for a continuous
    period of at least twelve months, the claimant will be
    found "disabled."

4.  If able to still perform work done in the past despite
    the severe impairment, the claimant will be found "not
    disabled."

5.  Finally, the Commissioner will consider the claimant's
    ability to perform work, age, education, and past work
    experience to determine whether or not the claimant is
    capable of performing other work which exists in the
    national economy.  If incapable, the claimant will be
    found "disabled."  If capable, the claimant will be
    found "not disabled."

6

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon finding the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  Id.  In the final step, the Commissioner bears the burden of proving that work is available for the claimant: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987) (citing Chicager v. Califano, 574 F.2d 161 (3d Cir. 1978)).

## II.  **BACKGROUND**

### A.   **Procedural History**

In 2004, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act, alleging disability commencing on July 18, 2002 due to coronary artery disease accompanied by coronary artery quadruple bypass surgery, diabetes mellitus, diabetic retinopathy, retinal hemorrhage, early cataracts, arthritis, and general weakness. (R. at 61, 64-97.)  The SSA denied the application both initially

(R. at 22-24) and on reconsideration (R. at 29-31), and Plaintiff requested a hearing (R. at 32), which was held before an ALJ on June 8, 2005 (R. at 44-48).

ALJ Daniel W. Shoemaker, Jr. issued his decision on October 25, 2005, ruling that Plaintiff was not entitled to DIB because he was not disabled before his insurance period expired on December 31, 2002.  (R. at 10-16.)  The ALJ noted that the Plaintiff was not engaged in substantial gainful activity and had not worked since his alleged date of disability, July 18, 2002.  (R. at 15.)  He found that the "claimant suffers from obesity, coronary artery disease, diabetes, diabetic retinopathy, possible depression, and a possible panic disorder," but said "objective evidence in the file does not substantiate the presence of these conditions causing any functional restrictions between July 18, 2002 and December 31, 2002."  (Id.)  ALJ Shoemaker concluded there was no objective documentation establishing Plaintiff's impairments rose to the severity required for a finding of disability until on or about October 2003, ten months after the Plaintiff's disability insurance expired.  (Id.)

Plaintiff requested review by the Appeals Council (R. at 9), which denied the request for further review (R. at 5-7). Plaintiff then timely filed the present action with this Court on February 21, 2006.  [Docket Item No. 1].

B. **Evidence in the Record**

    1. **Plaintiff's Testimony**

Plaintiff, who was 58 years old at the time of the administrative hearing in June 2005, lives with his wife, a secretary at Rowan University, in a duplex in Clayton, New Jersey.  (R. at 249, 251.)  His height is five foot eleven, and he estimated at the time of the hearing that his weight was 250 pounds.  (R. at 251.)

Plaintiff completed the eighth grade, after which he testified he dropped out to do carpentry and heating work, among other trades.  (R. at 250.)  He served three years in the Navy, from 1964 to 1967.  (R. at 249.)  Plaintiff then worked as a production mechanic at several factories, including Anchor Hocking Packaging Company, for nearly thirty years, until 1995. (R. at 255.)  He had been employed as a truck driver and deliveryman for the video arcade game industry for about a year before his alleged disability on July 18, 2002.  (R. at 252, 257.)  Plaintiff said the job required lifting and installing bulky machines that weighed more than 200 pounds.  (R. at 261.)

Plaintiff testified that his health problems began more than twenty years ago when he was diagnosed with diabetes mellitus. (R. at 254.)  He said his health began rapidly deteriorating soon after he began the video arcade game delivery work in 2001. (Id.)  He developed breathing and anxiety problems, and tired

easily after any amount of exertion.  (Id.)  He said he would go to bed immediately after work, and felt like his body was "short-circuiting on him."  (Id.)  Plaintiff voluntarily quit the delivery job on July 18, 2002 because he began having trouble managing his blood sugar, which caused occasional blackouts, and overall exhaustion led him to believe he couldn't perform the work.  (R. at 255.)

Plaintiff testified that he had an irregular electrocardiogram in late 2002, but it wasn't until September 2003 that a stress test found significant artery blockage.  (R. at 262.)  In October 2003, he had a quadruple bypass.  (Id.) Plaintiff said he had been hospitalized again with heart problems between the surgery and the time of the hearing, and continued to suffer from weakness, shortness of breath, anxiety and depression.  (R. at 263.)  He testified that he was capable of doing light household chores, such as mowing the lawn or vacuuming, but that they still tired him severely.  (R. at 264.)

Plaintiff said that the only work he had done since leaving his delivery job in July 2002 was some off-the-books roofing work for his son, which he stopped because of similar complaints of weakness and shortness of breath.  (R. at 255.)  He said he was still able to drive, and did some driving almost every day.  (R. at 252.)  He testified that he did not believe he could return to any of the work he did previously, as it would require working on

10

his feet for six hours a day and lifting more than 20 pounds. (R. at 266.)

## 2. **Medical Reports**

Plaintiff submitted medical evidence for the years between 1998 and 2005.  It should be noted, however, that there is a paucity of objective medical evidence in the record for the time period before December 2002.  In determining Plaintiff's impairment did not reach a severe level until October 2003, the ALJ considered and evaluated all the medical evidence submitted. Similarly, this Court will consider all relevant medical evidence in the administrative record in evaluating Plaintiff's appeal.

### a. **Medical Records Prior to December 31, 2002**

Plaintiff's medical records from dates prior to his insurance expiration on December 31, 2002 consist of notes from several trips to a family health center, two visits to an ophthalmologist, and one physical examination.  (R. at 228-40, 123-25, 126-27.)

The records from Underwood-Memorial Hospital's Family Health Center begin on June 4, 1998, when the Plaintiff was seen for foot swelling, hip spasms, and leg spasms.  (R. at 240.)  The unnamed provider noted that Plaintiff suffered from Type II diabetes mellitus, and that he was not fully compliant with his medication.  (R. at 238.)  A record from a May 17, 2000 visit showed Plaintiff had elevated cholesterol, and was prescribed

11

Lipitor and read a list of heart disease risk factors.  (R. at 236.)  Records from September 2000 and June 2001 noted that Plaintiff was a smoker and heavy drinker.  (R. at 234-35.)

Plaintiff was seen by Dr. Thomas Rozanski, an ophthalmologist, on March 8, 2001 and January 8, 2002.  (R. at 123-126.)  His diagnosis was a diabetic retinopathy related to his diabetes mellitus.  (Id.)  The ophthalmologist found evidence of retinal hemorrhage and early cataract formation, and referred Plaintiff to a retinal specialist.  (Id.)  He reported the conditions did not affect Plaintiff's ability to lift and carry, stand and walk, sit, or push and pull.  (Id.)

Plaintiff was examined by a physician, whose name is illegible, on December 18, 2002, thirteen days before his insurance expired.  (R. at 127.)  The physician's diagnostic impression was that Plaintiff was a "well adult" with diabetes, hypertension, and a history of cholelthiasis, or gallstones.  (R. at 128.)  The visit's record also contains a reference to an irregular electrocardiogram revealing nonspecific T-waves.  (Id.)

Other than that visit, the record contains no significant medical reports for the time period between July 18, 2002 (the onset date claimed by Plaintiff) and December 31, 2002 (the date Plaintiff's insurance benefits expired).

### b. Post-Coverage Medical Evidence (After December 31, 2002)

Plaintiff visited Dr. Robert Singer, a cardiologist, on

12

September 24, 2003, ten months after his insurance expired.  (R. at 171-73.)  Plaintiff was not in acute distress and had no cardiac symptoms.  (R. at 171.)  A stress test had been conducted a day earlier, and Dr. Singer wrote that those results, combined with Plaintiff's risk factors, made him "certain that [Plaintiff] does have coronary artery disease."  (R. at 172.)  The cardiologist ordered an echocardiogram and cardiac catheterization.  (Id.)

The cardiac catheterization was completed on October 9, 2003, and revealed severe blockage in three arteries.  (R. at 169-170.)  Plaintiff was advised to undergo coronary bypass surgery, and he was admitted to Our Lady of Lourdes Hospital on October 20, 2003 for the surgery.  (R. at 132-52.)  Upon examination of Plaintiff, surgeons decided to conduct a quadruple bypass.  (R. at 132-34.)  Plaintiff was discharged on October 26, 2003 (R. at 131), and records from a March 25, 2004 follow-up visit show he was recovering well from the surgery (R. at 164-68).

From after the surgery until 2005, Plaintiff saw his family physician, Dr. Lohtia, for care of his diabetes mellitus and hypertension.  (R. at 188-204.)  In May 2004, Dr. Lohtia conducted a functional capacity assessment, finding that Plaintiff was limited to sitting eight hours per day, standing or walking six hours per day, and lifting and carrying a maximum of

13

fifteen pounds.  (R. at 194-198.)  Plaintiff was admitted to the
Our Lady of Lourdes Hospital emergency ward on July 28, 2004,
complaining of shortness of breath, but a stress test and
electrocardiogram were normal, so he was released the next day.
(R. at 179-180.)  In December 2004, Plaintiff was seen for
problems with his left shoulder, and X-rays showed a mild degree
of degenerative arthritis in his left shoulder.  (R. at 190-91.)
On April 27, 2005, Plaintiff visited his cardiologist, who found
Plaintiff's echocardiogram was normal and that he offered no
complaints of chest pain or shortness of breath.  (R. at 207-09.)

### 3. __ALJ Findings__

ALJ Daniel Shoemaker, Jr. found that medical information
regarding Plaintiff's condition between October 9, 2003 until
April 27, 2005 was not relevant to determining whether Plaintiff
was disabled before his insurance expired on December 31, 2002.
(R. at 15.)  The ALJ found that during the "relevant time frame
in which Mr. Cope must establish disability, the record does not
show any severe functional restrictions associated with any of
his impairments."  (Id.)  Although the ALJ conceded that the
medical evidence showed Plaintiff suffered from obesity, coronary
artery disease, diabetes, diabetic retinopathy, possible
depression and possible panic disorder by the time of the
hearing, he decided that there was no objective documentation
establishing a "severe" level of impairment for twelve

14

consecutive months prior to Plaintiff's coronary bypass surgery in October 2003.  (Id.)  Therefore, the ALJ's step two inquiry concluded that absent any severe disabling impairments within the insured period, Plaintiff was not entitled to DIB.  (Id.)

**III. DISCUSSION**

In finding Plaintiff's impairments to be non-severe prior to December 2002, the ALJ reviewed medical evidence Plaintiff submitted from 1998 to 2005.  Through testimony and medical records, Plaintiff attempts to demonstrate he suffered from various severe impairments that reached the level of disability prior to the expiration of his disability insurance on December 31, 2002.  Plaintiff asks this Court to reverse the ALJ's finding of no disability during the period at issue based on three arguments: 1) the ALJ erred by failing to request a medical expert to determine the onset date of his disability (Pl.'s Br. at 15-21) 2) the ALJ did not properly determine whether he suffered from a "severe" impairment (Pl.'s  Br. at 21-22), and 3) the ALJ failed to properly assess the credibility of his subjective complaints (Pl.'s Br. at 22-25).  All three arguments are considered below.

**A.    Whether the ALJ was Required to Consult a Medical Expert to Determine Disability Onset**

In addition to demonstrating disability, in order to be entitled to DIB under Title II of the Social Security Act, plaintiffs must demonstrate the onset date of disability occurred

15

prior to the expiration of their disability insurance.  20 C.F.R. § 404.320(b)(2) (2006); Kane, 776 F.2d at 1131 n.1.  Where a plaintiff cannot show that the date of disability onset precedes the date the plaintiff's disability insurance expires, the plaintiff is not entitled to DIB.  De Nafo v. Finch, 436 F.2d 737, 739 (3d Cir. 1971) (finding Plaintiff was not entitled to DIB when heart problem became disabling after insurance expiration date, but was non-severe while Plaintiff was insured).

Plaintiff argues the ALJ erred in determining the disability onset date as October 2003 without consulting a medical expert. (Pl.'s Br. at 20-21.)  According to Plaintiff, medical expert testimony is required here to infer the date of disability onset because inadequate medical records exist between July 18 and December 31, 2002.  (Id.)  Plaintiff argues that Social Security Ruling ("SSR") 83-20 and the Third Circuit's holdings in Newell v. Comm'r of Soc. Sec., 347 F.3d 541 (3d Cir. 2003) and Walton v. Halter, 243 F.3d 703 (3d Cir. 2001) impose this requirement. (Id.)  In response, Defendant argues SSR 83-20 only mandates a medical expert when there are long gaps in medical evidence or the evidence conclusively demonstrates that a claimant is disabled during the insurance coverage period and it is necessary to infer an onset of disability.  (Def.'s Br. at 7.)  Defendant asserts that Newell and Walton are distinguishable from the instant case.  (Id.)

The Court agrees with Defendant's interpretation of SSR 83-

16

20.  The introduction to SSR 83-20 provides, in relevant part:
"In many claims, the onset date is critical; it may . . . even be
determinative of whether the individual is entitled to or
eligible for any benefits. . . . Consequently, it is essential
that the onset date be correctly established and supported by the
evidence, as explained in the policy statement."  SSR 83-20, 1983
WL 31249, at *1 (2006).  This is especially true for disabilities
of "nontraumatic origin," where onset involves consideration of
the plaintiff's allegations, work history, medical and other
evidence concerning the severity of the plaintiff's impairment.
Id. at *2.  The ALJ should consider medical evidence "as the
primary element in the onset determination," but where adequate
medical records are not available, he "should call on the
services of a medical advisor when onset must be inferred."  Id.
at *3.

    When determining a disability onset date, the ALJ must rely
on a "legitimate medical basis."  Walton, 243 F.3d at 708
(quoting SSR 83-20).  Based on the medical evidence, it may be
possible in some cases "to reasonably infer that the onset of a
disabling impairment(s) occurred some time prior to the date of
the first recorded medical examination."  Id.  Where it is
necessary to infer an onset date from the medical records, the
ALJ should request that a medical advisor infer the onset date to
ensure the onset date is determined on a legitimate medical

17

basis.  Newell, 347 F.3d at 548-49.

In Newell, the Third Circuit remanded the case because the ALJ did not use a medical expert to infer an onset date when the plaintiff's liver disease, diabetes and neuropathy reasonably could have become disabling prior to the first medical exam.  Id. The Court held that where there is a large gap in medical evidence, the ALJ must utilize the services of a medical expert to infer an onset date.  Id. at 548-48.  In Walton, the plaintiff alleged disability on the basis of slowly progressing bi-polar manic depression commencing twenty-eight years before the administrative hearing.  243 F.3d at 705-06.  The ALJ set an onset date based on the recollections of the plaintiff's psychiatrists, who did not retain their medical records from the relevant period.  Id. at 707-08.  The Third Circuit held the ALJ's findings were unsupported by adequate medical records, and remanded the case for the ALJ to appoint a medical expert to infer the onset date as required by SSR 83-20.  Id. at 709-10.

Yet in Kelley v. Barnhart, 138 F. Appx. 505, 509 (3d Cir. 2005), the Third Circuit held a medical expert was not required when medical and lay evidence tended to disprove Plaintiff's psychological disability claim from sixteen years earlier.  In Ballardo v. Barnhart, 68 F. Appx. 337, 339 (3d Cir. 2003), the Court distinguished Walton when available "[medical] reports provided a legitimate medical basis for the ALJ to make an

18

informed judgment as to the onset date."

In contrast to Walton and Newell, the ALJ in the present case had substantial medical evidence in the record to determine that an onset date did not occur before Plaintiff's benefits expired. There was no large pre-2003 gap in Mr. Cope's medical records. Plaintiff's September 2003 visit to the cardiologist that led to the quadruple bypass surgery was not his first medical examination, unlike the examinations showing disability in Walton and Newell. Here, Plaintiff had seen doctors for his various impairments and complaints throughout the relevant period and none of the medical reports indicated that he had any impairments that limited his ability to perform basic work activities. The ALJ considered that neither the ophthalmologist, Dr. Rozanski, nor the physician who examined Plaintiff just thirteen days before his benefits expired found any functional restrictions or substantial compromised capacity. (R. at 15.) The ALJ therefore determined that Plaintiff suffered from no impairments existing at a "severe" level for twelve months until about October 2003. (Id.)

The ALJ relied on Plaintiff's medical history from 1998 through 2005 in determining an onset date. In doing so, the ALJ did not infer an onset date. Instead, he determined the onset date based on medical evidence showing that Plaintiff's impairments became disabling in October 2003. (Id.) SSR 83-20 requires an ALJ to utilize a medical expert only when the onset

19

date cannot be determined on a "legitimate medical basis."
Kelley, 138 F. Appx. at 509; Ballardo, 68 F. Appx. at 339.  Here,
the ALJ used the medical records not just from the time period at
issue, but also from 1998 to 2005 as the legitimate medical basis
for finding October 2003 was the disability onset date.
Therefore, because the ALJ determined the onset date based on
substantial medical evidence in the record, the ALJ was not
required to use a medical expert to determine an onset date in
this case.

    **B.**   **Whether the ALJ Properly Determined that Plaintiff
Suffered from no "Severe" Impairment**

    Plaintiff argues the ALJ erred in dismissing this case at
step two of the sequential disability analysis because the ALJ's
decision was not supported by substantial evidence.  (Pl.'s Br.
at 21-22.)  Defendant argues the ALJ properly determined that no
"severe" impairments existed based on substantial evidence that
showed Plaintiff had no limitations on his ability to perform
basic work activities at the time his insurance expired.  (Def.'s
Br. at 9-13.)  In reviewing the administrative record, this Court
declines to reverse the ALJ's step two determination of no
"severe" impairments because the findings were based on
substantial evidence.  (R. at 13-16.)

    To establish that a "severe" impairment exists, a plaintiff
must show her impairment is more than a slight abnormality and
significantly limits her ability to work.  20 C.F.R. §§

404.1520(c); SSR 85-28.  SSA regulations describe the step two inquiry in terms of what is not a "severe" impairment, explaining an impairment that does not "significantly limit[] [the plaintiff's] physical or mental ability to do basic work activities" does not constitute a severe impairment.  20 C.F.R. § 404.1521(a)(2006).  Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  Newell, 347 F.3d at 546 (quoting 20 C.F.R. § 140.1521(b) (2006)).  However, the plaintiff's impairment should be considered "severe" if the plaintiff proves it is something beyond a "slight abnormality or combination of slight abnormalities."  Bowen v. Yuckert, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring).  As the Third Circuit stated in Newell, "only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits at step two."  347 F.3d at 546 (citing Justice O'Connor's concurrence in Yuckert, 482 U.S. at 158).  The step two inquiry thus "is a de minimis screening device to dispose of groundless claims."  Newell, 347 F.3d at 546.

In determining whether an impairment is severe, the ALJ, as the ultimate finder of fact, must consider all the evidence in the record and may weigh the credibility of the evidence.  Burnett, 220 F.3d at 122.  However, if choosing to disregard

21

evidence, the ALJ must provide an adequate explanation as to why it should be disregarded.  See Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994) (vacating and remanding where ALJ failed to explain how plaintiff with asthma could return to job which included exposure to dust and fumes).  In reviewing the ALJ's findings, this Court has a duty to review the evidence in its totality. Daring, 727 F.2d at 70.

Plaintiff's substantial evidence argument fails in light of the ALJ's reasonable conclusion, based on discussion and evaluation of all the medical evidence, that Plaintiff's impairments were not severe during the period at issue.  (R. at 13-16.)  In determining Plaintiff had no severe impairments prior to December 2002, the ALJ discussed each medical record from that period separately, finding no evidence indicating Plaintiff had functional limitations or significant impairments that could impact Plaintiff's ability to perform basic work activities. (Id.)  Specifically, the ALJ noted that the notes of the ophthalmologist and the physician who examined Plaintiff in December 2002 indicated that he had no limitations that would prevent him from working.  (R. at 14-15.)  The ALJ found that the medical records of Plaintiff's treatments and diagnoses revealed that there was no significant medical evidence until on or about October 2003 of Plaintiff's artery blockage, the most severe of his impairments.  (R. at 15.)  Considering all the evidence

22

before him, the ALJ found the doctors' notes and opinions indicated Plaintiff was not suffering from a severe impairment between July 18 and December 31, 2002.  This Court finds that decision was reasonable and based on substantial evidence.

### C.   Whether the ALJ was Required to Assess the Credibility of Plaintiff's Subjective Complaints

Plaintiff's last argument is that the ALJ failed to properly consider Plaintiff's subjective complaints of pain in determining whether his impairments were severe, as 20 C.F.R. § 404.1529 (2006) and SSR 96-7p, 1996 WL 374186 (2006) require.  (Pl.'s Br. at 21-25.)  Defendant contends that Plaintiff has not offered the medical evidence required to substantiate his subjective complaints of pain.  (Def.'s Br. 13-15.)  This Court again agrees with the Defendant's interpretation.

The ALJ is required to give serious consideration to Plaintiff's subjective complaints of pain.  Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986).  However, "it is well established that the ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical and other evidence, regarding the true extent of the pain alleged by the claimant."  Brown v. Schweiker, 562 F. Supp. 284, 287 (E.D. Pa. 1983) (quoting Bolton v. Sec'y of HHS, 504 F.Supp. 288, 291 (E.D.N.Y. 1980)).  Where an ALJ properly determines the credibility of Plaintiff's subjective complaints of pain, the reviewing court should not substitute its own determination of

23

credibility for that of an ALJ who had the opportunity to observe a plaintiff in person.  See Weir v. Heckler, 734 F.2d 955, 962 (3rd Cir. 1984) (recognizing that great deference is given to an ALJ's determination of credibility).

Subjective complaints of pain "do not in themselves constitute disability." Green v. Schweiker, 749 F.2d 1066, 1070 (3d Cir. 1984); 20 C.F.R. § 404.1529(a).  Complaints of pain must be accompanied by medical signs that show that the plaintiff has a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged.  20 C.F.R. § 404.1529(a) (explaining that "statements about your pain or other symptoms will not alone establish that you are disabled").  See Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971) (requiring plaintiff to meet burden of showing medical impairment to support subjective complaints of pain).  When a plaintiff's subjective complaints of pain indicate a greater severity of impairment than the objective medical evidence supports, the ALJ can give weight to factors such as physicians' reports, lay opinions and the plaintiff's daily activities.  20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, *4 (requiring the ALJ to "consider the entire case record and give specific reasons for the weight given to the individual's statements").

In this case, the ALJ considered Plaintiff's subjective complaints of pain by examining his testimony about pain

24

alongside all of the 1998 to 2005 medical evidence.  (R. at 15.)
In doing so, the ALJ found that prior to October 2003, the
Plaintiff's medical records did not indicate any impairment to
support the intensity and frequency of Plaintiff's subjective
complaints of pain.  (Id.)  Moreover, neither the ophthalmologist
nor the physician Plaintiff saw in December 2002 indicated that
he voiced any complaints, and notes from the December physical
examination left the "chief complaint" section blank.  (R. at
123-24, 127-28.)  Thus, the ALJ found these complaints were not
credible based on the medical evidence in the record.  (Id.)
Because the credibility determination was based on the medical
evidence in the record, the ALJ properly considered the
subjective complaints of pain, and his findings are entitled to
deference by this Court.

### III.  **CONCLUSION**

For the reasons stated above, the Commissioner's finding
that Plaintiff was not disabled between July 18 and December 31,
2002 will be affirmed.  The accompanying Order will be entered.


August 10, 2007                    **s/ Jerome B. Simandle**
DATE                               JEROME B. SIMANDLE
                                   United States District Judge